UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MATTHEW GETZ,

    Plaintiff,

                                          08-3063

ROBERT KINDERMAN et al.,

    Defendants.

## Order Granting Summary Judgment and Terminating Case

The plaintiff alleges that the defendants were deliberately indifferent to his serious medical need–asthma-during his incarceration in Christian County Correctional Center. For the reasons below, the court grants the defendants' motion for summary judgment.

*Legal Standard on Summary Judgment*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Summary judgment is . . . , when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

*Undisputed Facts*

These facts are taken, often verbatim, from the defendants' proposed undisputed material facts, to the extent not disputed by the plaintiff.

1

1. The plaintiff was incarcerated at the Christian County Jail (the "Jail") from November 6, 2006 to November 29, 2007.

2. On intake, the plaintiff answered "no" to the following questions: Have you recently fainted or had a head injury? Are you presently taking any medication? Are you supposed to be taking meds for a mental/emotional condition? Have you recently seen a doctor for any illness? The plaintiff does not dispute that he did not tell the booking officer that he had asthma.

3. On January 22, 2007, the plaintiff felt dizzy and short of breath. He recalls waking up on the floor. He stated in his deposition that he had passed out. However, the plaintiff's cellmates testified that they did not see the plaintiff pass out and that the plaintiff was not struggling to breathe. Since the posture of this case is summary judgment, the court accepts the plaintiff's description of what happened.

4. Immediately after this incident, the plaintiff was taken to the emergency room. The emergency center medical note states that the plaintiff reported "chest pain, headache and difficulty breathing for the last two months." The plaintiff also reported that he had a nebulizer at home because of his history of asthma. The physical examination of the plaintiff's chest showed: "Occasional expiratory wheeze. Nonlabored breathing. Increased pain and reproducible pain over the left anterior chest wall with palpation. No bruising, swelling, or erythema noted." The plaintiff was given Ativan and albuterol nebulizer and improved on reevaluation, with "no appreciable wheezes." The plan was to put the plaintiff on albuterol "as needed", along with Motrin and a prescription for Ativan (used for anxiety disorders).

5. Marvin Bland and Kenny Shuff both testified that the plaintiff received breathing treatments at least once a day after January 22, 2007. The defendants maintain that, after January 22, 2007, the plaintiff had an albuterol inhaler on his person, but the plaintiff disputes that, as discussed below.

6. On January 29, 2007, the plaintiff had a follow up visit with Dr. Kiel at the Springfield Clinic. The physical exam record revealed:

> . . .a moderately well kept male patient who does not appear in any acute distress. He states he has taken medications for this in the past, cannot remember what it was but believes it was Paxil. HEENT basically unremarkable. Cardiac, S1 and S2 is regular. Lungs are clear to auscultation with good vesicular sounds and no adventitious sounds.

The assessment was "anxiety, depression and asthma." The plaintiff's albuterol was refilled and he was started on Citalopram (for depression/anxiety).

7. On February 23, 2007, the plaintiff had another follow up visit. The plaintiff complained of his "nerves"–"everything startles me." He reported sleeping well, but not feeling rested. The plaintiff's physical exam was unremarkable, with clear lungs. The assessment was

depression. The plaintiff received another prescription for Citalopram at a stronger dose, and a prescription for albuterol nebulization solution.

8. The plaintiff testified that he passed out again and fell on March 9, 2007 from an asthma attack. (His cellmate testified otherwise, but the court takes the plaintiff's version for purpose of this order). He was taken to the emergency room. The history part of the medical record states:

> HISTORY OF PRESENT ILLNESS: Jailer states the patient was in his cell with two other people, apparently passed out, hit the back of his neck on the jail cell bars, slid down, woke up within seconds. No appreciable deficits. As soon as he woke up, he complained of some dizziness immediately before the incident but does have a history of anxiety and was hyperventilating which he has done multiple times in the past. Normally, he uses Albuterol, other medications but states he hasn't received any of them in the last week. Sheriff's records report he has received all of them up until today. He does have an Albuterol inhaler that will be picked up today for this evening's dose. On 2/26/07, patient was changed from Ativan to Lexapro. The patient has his pretrial date in three days. Patient's main concern is receiving his medications. No other specific concerns.

The plaintiff's physical exam, which included a chest x-ray, was unremarkable, with "nonlabored breathing" noted. The plaintiff was given Toradol (for pain) and Ativan (for anxiety). The plaintiff was diagnosed with a syncopal event, acute posterior neck contusions, anxiety, asthma and low phosphorus. The plaintiff's albuterol inhaler was refilled, and the plaintiff was discharged.

9. The plaintiff was reported to have fallen again on March 10, 2007. After this fall, the plaintiff was moved to a padded cell and Christian County Mental Health was contacted to evaluate the plaintiff.

10. On April 2, 2007, the plaintiff's public defender informed the court presiding over the plaintiff's criminal case that the plaintiff wanted the court to know that he had an asthmatic condition for which he was not receiving treatment. The court told the sheriff's deputy to relay the information to the jail administrator. On April 6, 2007, the plaintiff told the court presiding over his criminal trial that he was not getting his breathing treatments. The court again told the deputy to relay the comment to the jail administrator.

11. On May 15, 2007, the plaintiff was taken to Springfield Clinic for "concerns over depression, anxiety, and asthma." (5/15/07 medical report, Def. Ex. 5). The plaintiff reported using his albuterol inhaler and nebulizations at least twice a day each. The object part of the report revealed an "occasional faint wheeze in the right side, otherwise clear." The plan was to discontinue the nebulizations except as necessary and institute an "Advair Diskus."

12. On May 29, 2007, the plaintiff went to the Springfield Clinic for a follow up and for medication refills. The plaintiff reported that he had been using the Advair two puffs twice a day instead of one puff a day, as well as the albuterol inhaler once a day. Dr. Keil found the plaintiff's chest to be clear, and noted that the plaintiff's reported anxiety could possibly be related to his overdosing on Advair. The objective exam was unremarkable. Dr. Keil wrote: "Given a good clear chest at this point, we will decrease the Advair to one puff twice daily, increasing the dosage to 500/50 micrograms per dose. We will continue the Cymbalta at 60 mg. I will see him back here over the next three weeks . . .Hopefully we can then wean off of the Advair again. . . "

13. On June 19, 2007, the plaintiff went to the Springfield Clinic for another follow up visit. The plaintiff reported using his albuterol inhaler "three or four times a day or more. He is still feeling somewhat anxious. He says that he is sitting here right now and feels somewhat short of breath though his breathing is perfectly normal. He does not appear to be hyperventilating. He certainly is in no respiratory distress." (6/19/07 medical record, Def. Ex. 7). The physical exam was unremarkable. Dr. Kiel concluded that the plaintiff's "symptoms are related more to anxiety than anything else. However it is imperative that we further evaluate this with a pulmonary function test . . . .In the meantime we will increase his Cymbalta . . ."

14. On July 19, 2007, pulmonary function tests were run on the plaintiff at the hospital. The tests showed tests within normal range, except for and increase in "RV" and "TLC," which the report states is "sometimes a subtle sign of asthma." He also showed signs of "underlying bronchial reactivity."

15. On August 16, 2007, the plaintiff went to the Springfield Clinic for another follow up. According to the medical record, the plaintiff stated that he was doing well, did not need his Advair, and was using his albuterol inhaler only twice a week. Dr. Keil noted that the plaintiff had an "ABG highly suggestive of hyperventilation syndrome. . . .While he does have asthma, I believe all of his symptoms previously were certainly related to anxiety, probably from using his inhaler so much."

16. On October 4, 2007, the plaintiff was taken to Springfield Clinic, with the complaint that he did not believe his medications were working. He had stopped taking his Cymbalta, and the examiner believed that the plaintiff was exhibiting withdrawal symptoms. The plaintiff's active problems were listed as anxiety, asthma and depression. The physical exam was unremarkable, lungs clear, with the plaintiff in no acute distress.

*Analysis*

Deliberate indifference to a serious medical need violates a prisoner's rights under the Eighth Amendment to be free from cruel and unusual punishment. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001), *citing*

*Estelle v. Gamble*, 429 U.S. 153, 182-83 (1976). The injury or need must be objectively serious, and the official must personally know of the risk and consciously disregard it. *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999); *Mathis v. Fairman*, 120 F.3d 88. 91 (7th Cir. 1997); *Wynn v. Southward*, 251 F.3d at 593 (2001). An objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Chapman*, 241 F.3d at 845, *quoting Zentmyer v. Kendall County* 220 F.3d 805, 810 (7th Cir. 2000)(*quoting Gutierrez v. Peters* 111 F.3d 1364, 1373 (7th Cir. 1997)). An objectively serious condition also presents itself if "'failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain.'" *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999), *quoting Gutierrez*, 111 F.3d at 1373. The subjective component (deliberate indifference) does not encompass negligence or even gross negligence. *Id.*, *citing Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). "Deliberate indifference is a subjective standard. To demonstrate deliberate indifference, [a plaintiff] must show that the defendants 'acted with a sufficiently culpable state of mind.'" *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006)(Citations omitted). *Subjective* awareness is required. *Id.* Deliberate indifference is more than negligence or gross negligence–it "'approaches intentional wrongdoing,'" essentially a criminal recklessness standard, that is, ignoring a known risk.'" *Id.*.

It appears that the plaintiff suffers from anxiety, depression, and well-controlled asthma. Given the plaintiff's behavior at the Jail, the court believes an inference arises that his anxiety disorder and depression were serious enough to need treatment. The record does not really support the inference that the plaintiff's asthma was severe, or even moderate, but the court assumes for purposes of this order that the plaintiff's asthma was also a serious medical need.

Even so, there is no evidence of deliberate indifference. The record shows that the defendants took the plaintiff seriously. The plaintiff was taken to the emergency room each time he maintains that he passed out from an asthma attack (on January 22, 2007 and March 9, 2007). He was not taken to the emergency room when he "fell" again on March 10, 2007, but that was just a day after the plaintiff had already been released from the emergency room with a clean bill of health. The plaintiff was taken to at least eight follow up appointments with doctors, had various tests run, and received the prescribed medication. The medical records show that the plaintiff's asthma was well-controlled; in fact, the plaintiff perhaps used his asthma medicine too much, possibly because he misinterpreted an anxiety attack as an asthma attack. There is no evidence that the defendants could have done any more for the plaintiff.

The plaintiff says that the defendants deprived him "multiple times" of his albuterol inhaler and breathing treatments, but this statement remains a vague allegation. The plaintiff does not say which of the defendants he asked for his breathing medicines, how he asked, on what days, or how the defendants responded. In any event, even if the court accepts the plaintiff's allegation as true, the record shows that the plaintiff had his breathing treatments for nearly all of his incarceration at the prison; any deprivations were temporary and short-lived, assuming there were such deprivations, which, again, is not really an inference warranted from the record. The plaintiff suffered no harm from allegedly not having his inhaler "multiple

times"; in fact, the plaintiff probably used his inhaler and breathing treatments *too* much, as discussed above. The plaintiff posits that his "syncopal" event (when he apparently passed out in his cell on March 9, 2007) was triggered by an asthma attack, but there is no evidence of that.

In sum, there is no evidence of deliberate indifference. Accordingly, summary judgment is mandated for the defendants, and the court need not reach the defendants' other arguments.

IT IS THEREFORE ORDERED:

1) The defendant's motion for summary judgment is granted (d/e 19). The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.

2) If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). If he seeks leave to proceed on appeal *in forma pauperis*, then he must file a motion for leave to appeal *in forma pauperis* along with the notice of appeal. A motion to proceed *in forma pauperis* on appeal should set forth the issues the plaintiff plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C).

Entered this 9th Day of July, 2009.

s\Harold A. Baker

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE